O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-8069 AHM (VBKx) | Date | December 7, 2009 |
|---|---|---|---|
| Title | HORACE MICHAEL WILLIAMSON v. COOK COMPOSITES AND POLYMERS CO., et al | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | |
|---|---|---|
| S. Eagle | Not Reported | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys **NOT** Present for Plaintiffs: | Attorneys **NOT** Present for Defendants: | |

**Proceedings:**     IN CHAMBERS (No Proceedings Held)

Plaintiff Horace Michael Williamson ("Plaintiff" or "Williamson") brought this action against Defendants Cook Composites and Polymers Co., Curran Composites, Inc., Total Composites, Inc., and C-Two, LLC (collectively "CCP"), alleging that CCP had failed to pay overtime compensation and adequate meal and rest periods in violation of the California Labor Code as well as California's Unfair Competition Law.  CCP now moves for summary judgment on all claims.  For the reasons stated below, the Court DENIES CCP's motion.

## I.     FACTS

Defendant CCP produces and distributes gel coats (a product used on items such as boats), unsaturated polyester resins, coatings resins, and emulsions. CCP has a number of manufacturing facilities in the U.S.   SUF ¶ 1. Until November 2008, CCP had a facility in Oxnard, California, where it produced gel coat and, until 2007, produced resin.  SUF ¶ 1.

In 2003, CCP hired Plaintiff Horace Michael Williamson  as a technician in its gel coat department in Kansas City, Missouri.  Although Williamson only sought a technician position, his resume indicated that he had years of management experience. SUF ¶ 2.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-8069 AHM (VBKx) | Date | December 7, 2009 |
|---|---|---|---|
| Title | HORACE MICHAEL WILLIAMSON v. COOK COMPOSITES AND POLYMERS CO., et al | | |

**CCP Promotes Williamson to Supervisor at its Oxnard Facility**

In 2005, with the approval of the then-Vice President of Operations Greg Geary ("Geary"), CCP offered Williamson a promotion to Gel Coat Supervisor ("Supervisor") at its facility in Oxnard, California. SUF ¶ 3. Williamson accepted the promotion, and received a raise to an annual salary of $48,000 as well as a relocation package and a housing allowance. *Id.* ¶ 4. To prepare Williamson for his new role at the Oxnard facility, Jennie Newman ("Newman"), CCP's Vice President of Human Resources, conducted several hours of supervisory training with Williamson. *Id.* ¶ 5.

Williamson began work as a Supervisor of CCP's gel coat department in Oxnard beginning in April 2005. SUF ¶ 7. The parties do not dispute that Williamson spent at least *some* of his time performing management duties. Williamson's supervisors testify that they expected Williamson to perform management tasks and not to perform technician work. For example, Newman testified that CCP's expectations of Williamson as Supervisor were to manage employee performance (including interviewing, training, directing, delegating, scheduling, and evaluating), managing costs (including scheduling labor hours, handling inventory, handling raw materials), and managing production (including prioritizing jobs, handling employee complaints, conducting and attending meetings, and troubleshooting issues). SGI ¶ 6; Jones Decl. Exh. E (Newman Dep. at 26:25-28:4). Then-Vice President of Operations Geary testified that he expected Williamson to manage the plant and not to perform physical work, and expected that Williamson would spend 30% of his time learning plant processes and customers, 30% supervising the crew, 30% managing the production schedule, and 10% on paperwork. SGI ¶¶ 7-8; Jones Decl. Exh. D (Geary Dep. 89:17-92:6; 102:2-111:18).

Williamson, in contrast, testifies that Steve Dare, a manager at CCP, informed him that he would also be working on the floor as a foreman. SGI ¶¶ 6-8; Milhaupt Decl. Exh. H (Williamson Depo. at 95:14-97:24).[1]

---

[1] CCP correctly points out that this statement is hearsay. Nor is it admissible even to show its effect on Williamson's understanding of his duties, since under *Ramirez v. Yosemite Water Co.*, 20 Cal. 4th 785 (1999), discussed *infra*, only the employer's expectations are relevant.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-8069 AHM (VBKx) | Date | December 7, 2009 |
|---|---|---|---|
| Title | HORACE MICHAEL WILLIAMSON v. COOK COMPOSITES AND POLYMERS CO., et al | | |

The parties do not dispute that shortly after Williamson began work as a Supervisor, he performed many managerial duties, including (but not limited to) supervising his crew, adjusting assignments for his crew, running daily morning meetings for his crew (and later delegating to his shift coordinators the task of running such meetings), training his crew, reviewing his employees' time cards (or directing his shift coordinators to do so), disciplining his crew, attempting to improve the efficacy of his employees, and deciding how to spend his own time throughout the day.  SUF ¶¶ 9-14. The parties do, however, dispute the amount of time that Williamson spent performing such managerial tasks. SGI ¶¶ 9-14.  Williamson points to an email dated April 25, 2007 from Oxnard Plant manager Ron Kramer to Newman and Geary in which he notes Williamson's "lack of doing managerial tasks in paperwork and monitoring—hands on work he has done very well," and an email dated May 4, 2007 from Kramer to Newman, in which Kramer states: "I have tried to explain to [Williamson] that I appreciate . . . the work effort he is putting out but because California law is clear that a person performing non-exempt work for a majority of his day cannot be classified exempt and I am trying to protect the exempt status of [Williamson's] job." Milhaupt Decl. Exhs. D and E.[2]

**Williamson's Employee Performance Reviews in his Position as Supervisor**

In September 2005, Kramer evaluated Williamson's performance.  The review states that Williamson performed many managerial tasks, including organizing equipment to increase productivity, attempting to implement a formal schedule, informally starting to track materials and develop an ordering system, training personnel and motivating his crew.  SUF ¶ 15; Jones Dep. Exh. B (Williamson Dep. Exh. 19 [review dated 9/14/05]) at 2.  The review also stated that Williamson "has done a tremendous job in keeping gel coat on time & with a full crew (once trained) he can shift his attention more to

---

[2] The Court deems these emails admissible as non-hearsay evidence of the employer's expectations (state of mind).  In any event Fed. R. Evid. 807 permits the Court to admit statements that would otherwise be excluded as hearsay if  "(A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-8069 AHM (VBKx) | Date | December 7, 2009 |
|---|---|---|---|
| Title | HORACE MICHAEL WILLIAMSON v. COOK COMPOSITES AND POLYMERS CO., et al | | |

supervisory/managerial things." Jones Dep. Exh. B (Williamson Dep. Exh. 19 [review dated 9/14/05] at 1).

In March 2006, Kramer again evaluated Williamson's performance. In his written evaluation, Kramer noted that Williamson had developed "some very good scheduling & managerial skills," and that he had achieved excellent results in working on a schedule for production, had developed an outstanding system for inventory control, and "constantly monitor[ed] his area for improvement." SUF ¶ 16; Jones Dep. Exh. B (Williamson Dep. Exh. 20 [review dated 3/28/06]). At the same time, Kramer again noted the "need to move [Williamson] into a more managerial role." *Id*.

In April 2007, Kramer evaluated Williamson's job performance for a third time. SUF 17; Jones Dep. Exh. B (Williamson Dep. Exh. 21 [review dated 4/25/07]). The report clearly states that Williamson engaged in certain managerial duties (e.g. stating on page three that Williamson "performs exceedingly well in making gel coat & expects the same from his work force"), yet it also states that during the current performance period he "has spent most of his time doing work."[3] *Id*. at 1. Under the heading "Goals/Objectives for the Future Period" is the entry "Become more of a manager – 80% man. / 20% work." *Id*. at 5.

Williamson wrote comments on the April 2007 report in which he described his managerial duties. For example, he states: "People create quantity, a change is needed I switch the schedule put new plan out to my employees & let them know our job is never done;" "I let other managers know when I am doing something that affects all depts;" and "I do not understand what I am not monitoring, myself or my employees alert the proper people when supplies or batches or customers will be affected." Jones Dep. Exh. B (Williamson Dep. Exh. 20 [review dated 3/28/06] at 5).

## CCP Promotes Williamson to Production Manager

---

[3] The term "work" as used in the evaluation appears to refer to non-managerial duties, *see* Jones Dep. Exh. B (Williamson Dep. Exh. 20 [review dated 3/28/06] at 3) (distinguishing between the task of "becom[ing] more of a manager" and "work.")

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-8069 AHM (VBKx) | Date | December 7, 2009 |
|---|---|---|---|
| Title | HORACE MICHAEL WILLIAMSON v. COOK COMPOSITES AND POLYMERS CO., et al | | |

Mr. Kramer died suddenly in May 2007, and shortly thereafter Williamson met with Geary in Oxnard. The parties dispute whether at this point Williamson told Geary that he was spending the majority of his time doing technician work. SGI ¶ 19. Shortly thereafter, Williamson was promoted to Production Manager at the Oxnard facility, and given an overall 10% increase in compensation to an annual salary of over $58,000. SUF ¶ 20. As Production Manager, Geary expected Williamson to "line out his guys, line out the priorities of production, follow up with customer service, follow up with customers, follow up with salesmen . . . run a safe plant, run a clean plant[.]" SUF ¶ 21; Jones Dep. Exh. D (Geary Dep. at 62:18-63:3; 114:12-115:13). Geary testifies that he expected "an increase in responsibility, increase in autonomy," for Williamson because there was no longer a plant manager on site, and that Williamson "would have been responsible for determining what he did on a day by day, hour by hour basis." Jones Dep. Exh. D (Geary Dep. at 114:12-115:13; 117:7-118:17).

The parties dispute the extent to which Williamson's duties changed as a result of his promotion to Production Manager, and the extent to which Williamson performed managerial tasks. SGI ¶¶ 22-23. There does not appear to be any dispute that Williamson performed at least some managerial tasks, including dealing with customer service and salesmen, communicating with customer service and salesmen, determining when to request overtime, adjusting the schedule, and prioritizing tasks for the crew. Jones Dep. Exh. A (Williamson Dep. at 110:6-15; 293:16-297:25; 298:16-23; 320:19-321:8); SUF ¶ 22. Geary contends that he believed Williamson "was working autonomously to manage the plant, manage his people, manage the production schedule, communicate with sales, communicate with customer service." Jones Dep. Exh. D (Geary Dep. at 63:7-64:7); SGI ¶ 24. Williamson contends that in addition to these tasks, he also "work[ed] on the floor or in the lab doing routine product testing," and that Geary observed him performing such tasks. Williamson Decl. ¶ 9.

In 2007, Williamson recommended promotions and pay increases for his technicians, and prepared written performance appraisals on his technicians.[4] SUF ¶¶ 26-

---

[4] The parties dispute whether anyone at CCP relied upon or gave weight to Williamson's recommendations.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-8069 AHM (VBKx) | Date | December 7, 2009 |
|---|---|---|---|
| Title | HORACE MICHAEL WILLIAMSON v. COOK COMPOSITES AND POLYMERS CO., et al | | |

27.

In December 2007, Acting Plant Manager Patricio Cueva ("Cueva") prepared a written performance evaluation of Williamson. This review stated that "in 2008 [Williamson] will need to focus 90% on managing and 10% work since he will also be in charge of Shipping and Receiving out on the floor." Jones Dep. Exh. B (Williamson Dep. Exh. 22 [review dated 12/12/07] at 1). Although Williamson wrote in his own review that he had "surpassed by a comfortable margin" his objectives, Williamson contends that this comment does not refer to the 80/20 management goal that was set forth in his April 2007 review. SGI ¶ 29.

While the parties agree that Cueva saw Williamson supervising scheduling, checking on the crew and the status of the gel coat production, reviewing orders, and talking to customer service, CCP contends (and Williamson disputes) that Cueva never saw Williamson physically making gel coat. SGI ¶ 30.

In January 2008, Williamson filled out a position questionnaire for CCP. In filling out the form, Williamson was instructed by Cueva to describe what he believed to be the expectations of the production job manager. SUF ¶ 31. With those instructions, Williamson described the "primary purpose" as "ensur[ing] quality batches are produced and shipped out in a safe and effective and timely manner. *Id*; Jones Dep. Exh. B (Williamson Dep. Exh. 5). He also listed three individuals whom he supervised. In response to a question regarding the "principal challenges" that "you face in this position," Williamson wrote "A lot of manual labor in this dept, constantly switch people in & out to keep them fresh." *Id.* at 5. In response to the question "What typical decisions do you have total authority for making without review by a superior or senior level position," Williamson listed "scheduling, work assignments, reviews —annual; counseling, training, organization—to some degree; employee rewards; recommend promotions; recommend increases." *Id*.

## Williamson Applies for a Position as Plant Manager

In 2008, Williamson applied to be Plant Manager at the Oxnard facility. In his application, Williamson described his experience at Oxnard and the duties he believed

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-8069 AHM (VBKx) | Date | December 7, 2009 |
|---|---|---|---|
| Title | HORACE MICHAEL WILLIAMSON v. COOK COMPOSITES AND POLYMERS CO., et al | | |

qualified him to be Plant Manager:

> I am currently the Production Manager, Shipping & Receiving Manager & Quality Control Manager. I schedule incoming orders from customer service for lead times, cut batch tickets, perform yearly reviews of employees, assist in hiring of employees, work on our [management] programs, certified for hazwopper, forklift operation . . . conduct inspections on a regular basis, I work on and implement Safety Programs, I assign best scenario to achieve our goals for production and shipping . . . . Oversee cross-training of personel [sic], review and write procedures as needed, I set the Production floor up for lean/just in time Manufacturing, I communicate with Sales/Customer Service Personnel on a regular basis . . .

SUF ¶ 32; Jones Dep. Exh. B (Williamson Dep. Exh. 5 at 9).

On July 4, 2008, Plaintiff sent an e-mail to Geary, in which he described an exchange he had with another employee at the Oxnard facility. In the email he stated "I did nothing to offend [the other employee], I am not a [sic] hourly employee trying to get free hours on the company's dime . . ." SUF ¶ 33.

Shortly thereafter, Williamson stopped working at the Oxnard facility, citing stress. In August 2008 Williamson filed this lawsuit, alleging that CCP incorrectly classified him as an employee who was not entitled to overtime, when in fact he was functioning as an hourly employee who was entitled to overtime.

## II. LEGAL STANDARDS FOR A MOTION FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides for summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." *Anderson v. Liberty Lobby,*

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-8069 AHM (VBKx) | Date | December 7, 2009 |
|---|---|---|---|
| Title | HORACE MICHAEL WILLIAMSON v. COOK COMPOSITES AND POLYMERS CO., et al | | |

*Inc.*, 477 U.S. 242, 256 (1986). A fact is material if it could affect the outcome of the suit under the governing substantive law. *Id.* at 248. The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

"When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the other party's case. *See Celotex*, 477 U.S. at 325. Thus, "[s]ummary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'" *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-06 (1999) (citing *Celotex*, 477 U.S. at 322).

When the moving party meets its burden, the "opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment will be entered against the opposing party if that party does not present such specific facts. *Id.* Only admissible evidence may be considered in deciding a motion for summary judgment. *Id.*; *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quoting *Anderson*, 477 U.S. at 255). But the non-moving party must come forward with more than "the mere existence of a scintilla of evidence." *Anderson*, 477 U.S. at 252. Thus, "[w]here the record taken as a

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-8069 AHM (VBKx) | Date | December 7, 2009 |
|---|---|---|---|
| Title | HORACE MICHAEL WILLIAMSON v. COOK COMPOSITES AND POLYMERS CO., et al | | |

whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

Simply because the facts are undisputed does not make summary judgment appropriate. Instead, where divergent ultimate inferences may reasonably be drawn from the undisputed facts, summary judgment is improper. *Braxton-Secret v. A.H. Robins Co.*, 769 F.2d 528, 531 (9th Cir. 1985).

## III.   EXECUTIVE EXEMPTION REQUIREMENTS

Williamson's claims arise out of CCP's alleged violation of the California Labor Code's exemption from overtime for executive employees, Cal. Lab. Code § 515(a), as well as a violation of California's Unfair Competition Law, Cal. Bus & Prof. Code §§ 17200 *et seq*. Under section 515(a), the California Industrial Welfare Commission ("IWC") is authorized to "establish exemptions from [these laws] . . . for executive, administrative, and professional employees, provided [inter alia] that the employee is primarily engaged in duties that meet the test of the exemption, [and] customarily and regularly exercises discretion and independent judgment in performing those duties." Cal. Lab.Code § 515(a). These exemptions are defined in "wage orders," the relevant one here being Wage Order No. 4-2001 ("Wage Order"), covering "Professional, Technical, Clerical, Mechanical and Similar Occupations," published at Cal. Code. Regs. tit. 8, § 11040.

Pursuant to the Wage Order, a person employed in an executive capacity includes any employee who meets all of the following six requirements:

> (a) Whose duties and responsibilities involve the management of the enterprise in which he/she is employed or of a customarily recognized department or subdivision thereof; and
>
> (b) Who customarily and regularly directs the work of two or more other

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-8069 AHM (VBKx) | Date | December 7, 2009 |
|---|---|---|---|
| Title | HORACE MICHAEL WILLIAMSON v. COOK COMPOSITES AND POLYMERS CO., et al | | |

employees therein; and

(c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

(d) Who customarily and regularly exercises discretion and independent judgment; and

(e) Who is primarily engaged in duties which meet the test of the exemption. The activities constituting exempt work and non-exempt work shall be construed in the same manner as such items are construed in the following regulations under the Fair Labor Standards Act effective as of the date of this order: 29 C.F.R. Sections 541.102, 541.104-111, and 541.115-116. Exempt work shall include, for example, all work that is directly and closely related to exempt work and work which is properly viewed as a means for carrying out exempt functions. The work actually performed by the employee during the course of the workweek must, first and foremost, be examined and the amount of time the employee spends on such work, together with the employer's realistic expectations and the realistic requirements of the job, shall be considered in determining whether the employee satisfies this requirement[; and]

(f) [Who] also earn[s] a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment. Full-time employment is defined in Labor Code Section 515(c) as 40 hours per week.

Cal. Admin. Code tit. 8, § 11040.

## IV.  DISCUSSION

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-8069 AHM (VBKx) | Date | December 7, 2009 |
|---|---|---|---|
| Title | HORACE MICHAEL WILLIAMSON v. COOK COMPOSITES AND POLYMERS CO., et al | | |

### A. Williamson earned a monthly salary equivalent to no less than two times the state minimum wage

The parties do not dispute that Williamson received the requisite monthly salary to exempt him from overtime.

### B. Williamson managed a department and customarily and regularly directed two or more employees.

There is no genuine issue of fact that Williamson managed a department and that he regularly directed two or more employees. He was a Supervisor, and then a Manager of the gel coat department at CCP's Oxnard facility. As part of his duties—as understood both by him and his superiors—Williamson was responsible for managing and directing the activities of the gel coat process technicians. He admits that he engaged in these duties early on in his employment (according to Williamson himself, "two weeks to one month after" he received his promotion), *see* Williamson Decl. ¶ 4, and he consistently listed these as his responsibilities in his performance evaluations and in his application for a job as Plant Manager. Accordingly, CCP has demonstrated the absence of a triable issue of material fact on these questions.

### C. Williamson made suggestions and recommendations on hiring and promotions

Williamson acknowledged that he interviewed and recommended for hire two employees whom CCP subsequently hired. Throughout the course of his employment, Williamson prepared more than ten performance evaluations, recommended pay increases, and recommended a promotion that CCP subsequently implemented. Williamson disputes, however, that his recommendations were given "particular weight" (or any weight at all) by CCP. That dispute is not material.

Williamson has not put forth any facts that demonstrate a triable issue on this

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-8069 AHM (VBKx) | | Date | December 7, 2009 |
|---|---|---|---|---|
| Title | HORACE MICHAEL WILLIAMSON v. COOK COMPOSITES AND POLYMERS CO., et al | | | |

factor. He points only to CCP's lack of evidence that the "ultimate CCP decisionmaker knew of, and gave weight to, Mr. Williamson's recommendations." Opp'n. at 10. He states in his deposition that he does "not know whether [his] recommendations carried any significant weight, or actually played in role in these hiring decisions." Williamson Decl. ¶ 5. This disclaimer does not constitute "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). Williamson himself, in his application for becoming Plant Manager, listed his qualifications as including having "perform[ed] yearly reviews of employees," and "assist[ed] in hiring of employees." SUF ¶ 32; Jones Dep. Exh. B (Williamson Dep. Exh. 5 at 9). Additionally, both of the employees whom Williamson recommended were hired. Thus, CCP has met its burden of showing that no genuine issue of fact exists on the question of whether management afforded Williamson's recommendations significant weight.

### D. Williamson regularly exercised independent judgment and discretion

Williamson, in his Opposition, does not argue that he did not regularly exercise independent judgment and discretion in his roles as Supervisor and Production Manager, and his own admissions demonstrate that he did so. He admits that he had responsibility for and authority to (among other things): schedule production; send employees from his department to shipping and receiving to help out; decide when employees would be allowed to take their breaks; and determine based on his existing schedule whether or not he could meet the lead time and delivery date for a new order. Jones Dep. Exh. B (Williamson Dep.at 66:23-25; 70:3-20; 206:21-24; 294:20-25). From early on in his employment, he ran daily morning meetings for his crew, and "decide[d] what topics [he] wanted to discuss." SUF ¶ 13; Jones Dep. Exh. B (Williamson Dep.at 315:4-9). Williamson admits that his schedule would change throughout the day based on need, and that he had the responsibility to adjust his employees' assignments so that he could meet his deadlines. Jones Dep. Exh. B (Williamson Dep.at 317:15-21). These admissions "firmly establish the extent to which [Williamson] customarily and regularly exercised discretion and independent judgment." *Wilbur v. Silgan Containers Corp.,* 06-CV-01281-MCE, 2008 WL 3863700 at *11 (E.D. Cal. Aug. 19, 2009) (finding that an employee who was responsible for scheduling and prioritizing tasks for others demonstrated his

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-8069 AHM (VBKx) | Date | December 7, 2009 |
|---|---|---|---|
| Title | HORACE MICHAEL WILLIAMSON v. COOK COMPOSITES AND POLYMERS CO., et al | | |

exercise of discretion and independent judgment).

### E.  A triable issue exists on the question of whether Williamson primarily engaged in exempt duties

"The 'primarily engaged' element has been construed to require that the employee spend at least fifty percent of his or her time on work that meets the test of the exemption." *Ho v. Ernst & Young LLP*, 2009 WL 111729 (N.D.Cal. Jan. 15, 2009) (*citing Combs v. Skyriver Communications, Inc.*, 159 Cal.App.4th 1242, 1267 (2008)).  In evaluating this factor, a court must look to both the employee's actual duties and the employer's expectations.  *Ramirez v. Yosemite Water Co.*, 20 Cal. 4th 785 (1999).  The *Ramirez* Court explained the logic behind this approach:

> On the one hand, if hours worked on [an exempt activity] were determined through an employer's job description, then the employer could make an employee exempt from overtime laws solely by fashioning an idealized job description that had little basis in reality. On the other hand, an employee who is supposed to be engaged in [an exempt activity] during most of his working hours and falls below the 50 percent mark due to his own substandard performance should not thereby be able to evade a valid exemption.

*Ramirez*, 20 Cal.4th at 802.   Thus, the relevant inquiry is "into the *realistic* requirements of the job." *Id*.  This requires a consideration, "first and foremost, how the employee actually spends his or her time. But the trial court should also consider whether the employee's practice diverges from the employer's realistic expectations." *Id.  See also* Cal. Admin. Code tit. 8, § 11040-1(a)(1)(e).

Williamson contends that he spent the majority of his time performing technician tasks.  The only evidence that Williamson has put forth that he was performing non-exempt duties for more than fifty percent of his time is his April 25, 2007 performance review (Exh. 21) (which states that Williamson "has spent most time doing [non-exempt]

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-8069 AHM (VBKx) | Date | December 7, 2009 |
|---|---|---|---|
| Title | HORACE MICHAEL WILLIAMSON v. COOK COMPOSITES AND POLYMERS CO., et al | | |

work") and the April 25, 2007 and May 4, 2007 emails from Kramer to Newman. For the purposes of summary judgment, CCP does not controvert Williamson's assertion as to the amount of time he spent on non-management tasks. Motion at 19. CCP argues that because its realistic and reasonable expectations were that Williamson would spend the majority of his time engaged in management tasks, no genuine issue exists on the question of whether Williamson was primarily engaged in exempt duties as defined by the Wage Order. *Id*. at 19-20.

CCP has put forth ample evidence that clearly demonstrates Williamson was expected to spend the majority of his time performing managerial duties. Such evidence includes testimony from Williamson's superiors regarding their expectations of Williamson, the goals listed in his performance reviews, and Williamson's own description of his job expectations. However, CCP was also clearly aware that Williamson was spending some of his time (and at certain points the majority of his time) performing technician work, and at no time was Williamson reprimanded for performing such duties. *See* Jones Dep. Exh. B (Williamson Dep. Exh. 21 [review dated 4/25/07]).

CCP has not pointed the Court to any authority that would permit it to disregard the holistic approach envisioned by the Wage Order and the California Supreme Court. Although it may have been that Williamson was "supposed to be engaged in [an exempt activity] during most of his working hours," CCP has not established that he fell below the 50 percent mark—*i.e.*, performed non-management duties—"due to his own substandard performance." *Ramirez*, 20 Cal.4th at 802. And CCP has the burden of proving that key fact. *See Perine v. ABF Freight Sys.*, 457 F. Supp. 2d 1004, 1010 (C.D. Cal. 2006); *Ramirez, supra*, at 794-95. CCP argues that the fact that Williamson was performing non-exempt duties in direct contravention of the goals set for him in his performance reviews compels the Court to reach a different conclusion. However, Williamson has put forth evidence that CCP was aware that he was performing non-exempt duties for at least a portion of the time he was labeled an "exempt" employee. Moreover, he was not prohibited from engaging in such work, and his evaluations did not appear to suffer as a result of such work. Although CCP contends that the reason

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-8069 AHM (VBKx) | Date | December 7, 2009 |
|---|---|---|---|
| Title | HORACE MICHAEL WILLIAMSON v. COOK COMPOSITES AND POLYMERS CO., et al | | |

Williamson was never disciplined concerning his performance of non-management tasks was that upper management was not aware of such tasks, Williamson's performance reviews suggest otherwise.

The Court surmises that carefully-drafted Requests for Admission and other forms of discovery could have established with sufficient precision whether Williamson spent the majority of his time on non-exempt functions. It is vexing to the Court that this one issue may require a trial.

## V.     CONCLUSION

Williamson has demonstrated a triable issue as to whether he primarily engaged in exempt duties. Accordingly, CCP's motion for summary judgment is DENIED.

                                                                                                                                                   :

Initials of Preparer      se